Michael H. Domesick
135 Chestnut St., Unit 2814
New Britain, CT 06050

Plaintiff, *Pro Se*



## U.S. DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL H. DOMESICK, individually,<br><br>Plaintiff,<br>v.<br><br>JD E-COMMERCE AMERICA LIMITED, a Delaware business entity, JD.COM AMERICAN TECHNOLOGIES CORPORATION, a Delaware business entity, JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION LIMITED, a Hong Kong Business Entity, WALMART, INC., a Delaware corporation, and the parties named as ADDITIONAL DEFENDANTS<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED**<br><br><br>Date Action filed:  May 4, 2023 |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Michael H. Domesick ("Plaintiff") hereby asserts the following claims against Defendants JD E COMMERCE AMERICA LIMITED, a Delaware business entity ("Joybuy America"), JD.COM AMERICAN TECHNOLOGIES CORPORATION, a Delaware business entity ("Joybuy Tech"), JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION LIMITED, a Hong Kong business entity ("Joybuy," and collectively with Joybuy America and Joybuy Tech, the "Joybuy Defendants"), WALMART, INC., a Delaware corporation ("Walmart"), and the parties named herein as ADDITIONAL DEFENDANTS (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE CASE**

1.      This is an action arising out of Defendants' brazen and lawless engagement in intellectual property theft, including patent infringement, unfair competition, tortious interference with business relationships, and fraudulent and negligent misrepresentation.

2.      Defendants, including the Joybuy Defendants and Walmart, have infringed and continue to infringe one or more claims of Plaintiff's U.S. Patent Nos. 10,286,245 and 11,491,264, which relate to apparatuses for facilitating plank exercises, and 9,895,573, which relates to a method of facilitating plank exercises (collectively, the "Patents-in-Suit"), at least by the importation, sale, and offer for sale of various planking devices incorporating the patented features or practicing the patented methods. While the Additional Defendants' involvement may be limited to specific planking devices, it does not absolve them of responsibility for any infringement that occurred through their use, importation, manufacture, sale, or offer for sale of planking devices that incorporate the patented features or practice the

1   patented methods, or failure to cease sales of their inventory of such devices through other

2   channels.

3       3.      Upon information and belief, compliance with the digital marking provisions

4   of 35 U.S.C. § 287(a) has been made with respect to U.S. Patent Nos. 10,286,245 and

5   11,491,364, with such compliance being made no later than at least September 2022 and

6   November 2022, respectively. As to the method claim of U.S. Patent No. 9,895,573,

7   constructive notice for treble damages is believed to be established as of the date of its issuance

8   in February 2018, in accordance with 35 U.S.C. § 287(a). For the reasons described more fully

9   below in this Complaint, Plaintiff seeks treble damages, as allowed under 35 U.S.C. § 284, for

10  any acts of infringement occurring at least as early as the respective compliance dates for each

11  patent.

12      4.      Plaintiff is the legal owner of the Patents-in-Suit, which were duly and legally

13  issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks injunctive

14  relief and monetary damages for Defendants' unlawful activities.

## JURISDICTION AND VENUE

15      5.      This is a civil action arising under the patent laws of the United States, 35

16  U.S.C. § 1 et seq., and the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as well as common law,

17  including but not limited to unfair competition under state law, and tortious interference with

18  business relationships

19      6.      This Court has subject matter jurisdiction over the matters asserted herein

20  under 28 U.S.C. §§ 1331, 1338(a), and supplemental jurisdiction pursuant to 28 U.S.C. §

21  1367(a), as the state law claims arise out of the same common nucleus of operative facts as the

22  federal patent and Lanham Act claims.

7.      Defendants are subject to this Court's personal jurisdiction. Defendants have infringed the Patents-in-Suit in this District by, among other things, engaging in infringing conduct within and directed at or from this District. For example, Defendants have purposefully and voluntarily placed the infringing planking devices into the stream of commerce with the expectation that these infringing products will be used in this District. These infringing products are either being sold in this District or have either been sold and used in this District, and, upon information and belief, are readily available for sale in the future.

8.      Venue is proper in the United States District Court of Connecticut pursuant to 28 U.S.C §§ 1391(b), 1391(c), and 1400(b) on information and belief that: (a) this is a judicial district in which a substantial part of the events giving rise to the claims occurred, including but not limited to the sale, distribution, and advertising of the infringing planking devices, and a substantial part of the injury took place and continues to take place; and (b) Defendants are subject to the Court's personal jurisdiction with respect to this action, as they have engaged in infringing conduct within or directed at or from this District, and have purposefully and voluntarily placed the infringing planking devices into the stream of commerce with the expectation that these infringing products will be used in this District.

9.      Upon information and belief, Defendants Joybuy America and Joybuy Tech are corporate subsidiaries of Joybuy, a Hong Kong business entity. Joybuy is affiliated with JD.com, a Chinese e-commerce business listed on the NASDAQ stock exchange in New York, New York under the ticker JD. Joybuy promotes its status as a prominent e-retailer in the United States and has strong connections to this jurisdiction, evidenced by its numerous high-profile agreements with American companies to expand its business operations throughout the

country, utilizing a network of distribution facilities located throughout the United States, including in areas that require the transportation of goods through Connecticut, which plays a crucial role as a hub for the Northeast corridor and the United States as a whole, making it an essential part of the Joybuy Defendants' distribution network.

10.     Upon information and belief, Defendants Joybuy America and Joybuy Tech are fully or substantially owned and controlled by Defendant Joybuy, which has intentionally availed itself of this court's jurisdiction through the course of its business operations.

11.     Upon information and belief, the Joybuy Defendants sell and ship products via their various branded websites, as well as *Walmart.com*, nationwide throughout the U.S.A., including to the District of Connecticut.

12.     Indeed, the Joybuy Defendants have previously and continuously availed themselves of this jurisdiction, with the website *joybuy-us.com*, explicitly affiliated with Joybuy America and featuring a variety of products marketed to consumers in the United States, including in the District of Connecticut.

13.     As to Defendant Walmart, they have significant physical and commercial ties to this jurisdiction through their various retail stores located in the District of Connecticut.

14.     Additionally, on information and belief Defendant Walmart also sells and ships products via the affiliated website *Walmart.com* nationwide throughout the U.S.A., including to the District of Connecticut.

15.     Upon information and belief, each of the Additional Defendants has been a Walmart marketplace seller who has directly or indirectly infringed the Patents-in-Suit, as detailed in Exhibits B, C, D, E, and/or F, specifically identifying the infringing product(s) sold by each Defendant, in the District of Connecticut by, among other things, importing,

1   manufacturing, distributing, marketing, offering to sell and/or selling infringing products and

2   services in the United States, including in this district, through *Walmart.com*, or other online

3   marketplaces, and otherwise purposefully directing infringing activities to this district in

4   connection with the infringing planking devices covered by the Patents-in-Suit. For a complete

5   list of the Additional Defendants, *see* the "PARTIES" section of this Complaint.

6

7                                   **PARTIES**

8        16.    Plaintiff is an individual residing in Connecticut.

9        17.    Upon information and belief, Joybuy America advertises, distributes, and sells

10  products under various brand names, including "Joybuy Express," "Joybuy America," "Joybuy

11  Fashion," and "Joybuy Selection" to consumers throughout the United States, including

12  consumers within this Court's jurisdiction.

13

14       18.    Upon information and belief, Plaintiff alleges that Defendants Joybuy

15  America and Joybuy Tech are affiliated with Joybuy, a Hong Kong e-commerce business listed

16  on the NASDAQ stock exchange in New York, New York under the ticker JD.

17

18       19.    Plaintiff is informed and believes and therefore alleges that Defendants

19  Joybuy America and Joybuy Tech are fully or substantially owned and controlled by Defendant

20  Joybuy.

21       20.    Upon information and belief, Plaintiff alleges that Joybuy advertises,

22  distributes, and sells products under its own brand names, including "Joybuy," to consumers

23  throughout the United States, including consumers within this Court's jurisdiction.

24

25       21.    According to JD.com's 2021 annual report (JD.com 2021 Annual Report),

26  Joybuy has a strategic relationship with Walmart in e-commerce and other ventures and counts

27

28

1    Defendant Walmart as one its largest shareholders with an approximately 9.3% ownership

2    interest at the time.

3                                    **ADDITIONAL DEFENDANTS**

4

5            22.    The Additional Defendants are Walmart marketplace sellers who have directly

6    or indirectly infringed one or more of the Patents-in-Suit in the District of Connecticut by,

7    among other things, importing, manufacturing, distributing, marketing, offering to sell, selling

8    infringing products or engaging in the practice of patented methods in the United States,

9    including in this district, through *Walmart.com*, other online marketplaces, and otherwise

10   purposefully directing infringing activities to this district in connection with the infringing

11   planking devices covered by one or more of the Patents-in-Suit.

12

13           23.    The Additional Defendants include Defendant Centune Toon, Inc. (a.k.a.

14   CentuneToon Home), a Colorado corporation, Defendant Funny Bone Products, LLC, a

15   Florida limited liability company, Defendant HTPOIL HOLDING TRADE CO., LTD, a

16   Colorado business entity, Defendant Iaobao Limited (a.k.a. IAO Tech), a Colorado-formed

17   business entity, Defendant INNO PRODUCTS MALL, INC., a Colorado corporation,

18   Defendant JAYBALLY, INC., a Colorado corporation, KESLEN LLC, a California limited

19   liability company, Defendant New Shining Image LLC (a.k.a. NSI Deals), a New York limited

20   liability company, and Defendant Weichang Zhang of Wenchang Liuzuohu Shangmao

21   Youxiangongsi Ltd (a.k.a. Street Corner Co.), a Chinese business entity (collectively, the

22   "Additional Defendants"). They are included as Additional Defendants due to their infringing

23   activities on *Walmart.com* or other channels and upon information and belief that they may be

24   operating in coordination with other defendants, including the Joybuy Defendants, based on

25

26

27

28

their shared strategy of offering infringing products at similar times or otherwise acting as alter egos.

24.     Upon information and belief and as further explained below, the Joybuy Defendants have been or are acting in coordination with certain of the Additional Defendants, including but not limited to Centune Toon, Inc. (a.k.a. CentuneToon Home), and other parties that Defendant Joybuy exercises control over or has a close business relationship with, and are otherwise liable for relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale, selling infringing planking products or engaging in the practice of patented methods in this District.

25.     Upon information and belief, Plaintiff alleges that there may be additional entities involved in the infringement of the Patents-in-Suit, including peripheral sellers with a connection to Defendant Joybuy and/or Walmart. Plaintiff alleges that these entities may be related or affiliated with Defendant Joybuy or Walmart, or may be acting in coordination with them. Plaintiff reserves the right to amend this Complaint to assert that Joybuy is the alter ego of specific Additional Defendants and therefore hold the Joybuy Defendants or Defendant Walmart liable for their actions or include any additional defendants or theories of liability that may be discovered through the course of discovery.

### ALTER EGO LIABILITY AS TO THE JOYBUY DEFENDANTS AND OTHERS

26.     Upon information and belief, during the period relevant to this Complaint, there existed a unity of interest or other close business relationship between Defendants Joybuy America, Joybuy Tech, certain of the Additional Defendants, and other affiliated entities involved in the infringement of the Patents-in-Suit, on the one hand, and Defendant Joybuy.

27.     Upon information and belief, Joybuy America and Joybuy Tech are the alter egos of Joybuy, in that Joybuy America and Joybuy Tech were established and used by Joybuy to carry out its business, while Joybuy maintained complete control and dominance over Joybuy America and Joybuy Tech, including their business operations and assets, to such an extent that Joybuy America and Joybuy Tech were mere shells, instrumentalities, and conduits through which Joybuy conducted business, with no real separateness or individuality between them.

28.     Upon information and belief, Joybuy America and Joybuy Tech may have been inadequately capitalized during the period relevant to this Complaint, such that their capitalizations were potentially illusory and trifling.

29.     During the period relevant to this Complaint, the Joybuy Defendants used substantially similar branding and logos as Joybuy, and shared nearly identical websites and email addresses. Specifically, on *Walmart.com*, Joybuy America and Joybuy used non-differentiated branding and identical logos.

30.     Upon information and belief, during the period relevant to this Complaint, the Joybuy Defendants shared employees.

31.     Joybuy America and Joybuy Tech, during the period relevant to this Complaint, shared the same physical address for their business operations, located at 675 E Middlefield Rd, Mountain View, California 94043.

32.     During the time period relevant to this Complaint, Joybuy America and Joybuy Tech both listed Nani Wang as CEO, CFO, and Secretary in their filings with the California Secretary of State and that Ms. Wang was listed as located at the aforementioned Mountain View address in filings for both of the aforementioned Defendants.

33.     During the time period relevant to this Complaint, Joybuy America and Joybuy Tech shared the same registered agent for service of process.

34.     During the relevant period of this Complaint, it appears that Joybuy America and Joybuy Tech shared the same office space, employees, executives, and branding, which may suggest a lack of independence and an absence of an arms-length relationship among the Joybuy Defendants

35.     Adherence to the fiction of the separate existence of the Joybuy Defendants would permit an abuse of the corporate privilege and would sanction malfeasance, promote injustice, and otherwise aid in the commission of unlawful conduct. This is true because, as Plaintiff is informed and believe, at all relevant times, Joybuy America and Joybuy Tech operated as mere instrumentalities of Joybuy, with little or no genuine independence or separate corporate governance. The shared office space, employees, executives, and branding between the aforementioned entities further indicate a systematic and persistent failure to maintain an arm's length relationship between the Joybuy Defendants, perpetuating the fraud and injustice committed against Plaintiff.

36.     Additionally, upon information and belief, based on information and belief, Joybuy had other corporate subsidiaries or affiliated entities during the relevant period covered by this Complaint, whose identities and potential roles in the Joybuy Defendants' infringement of the Patents-in-Suit and other actions described herein have not been ascertained yet.

37.     Upon information and belief, additional alter ego corporate subsidiaries, including Jingdong Logistics United States Company, may be involved in the infringement of the Patents-in-Suit and other actions described herein, as they share common officers, locations, and agents for service of process with Joybuy America and Joybuy Tech.

38.     Plaintiff reserves the right to amend this Complaint to include any additional alter ego corporate subsidiaries whose identities, actions, and roles in the Joybuy Defendants' infringement of the Patents-in-Suit and other actions described herein are discovered.

## PLAINTIFF AND HIS PATENTS

39.     Plaintiff is the inventor and owner of several patents related to exercise equipment, including the Patents-in-Suit, true and correct copies of which are attached hereto as Exhibit A.

40.     Plaintiff released his patented exercise equipment, the ABMILL Plank Trainer, in late 2018. The product features arm pads and hand grips on an adjustable frame, designed to enhance the effectiveness of traditional plank exercises and provide leverage to do many planking variations with increased comfort and stability.

41.     The ABMILL Plank Trainer has been made available for purchase through various online channels, including but not limited to Plaintiff's website and Amazon.

## JOYBUY DEFENDANTS' ACTS GIVING RISE TO THIS ACTION

42.     Upon information and belief, the Joybuy Defendants are in the business of commercially manufacturing, selling, distributing, and displaying a variety of items via e-commerce channels, including fitness equipment.

43.     Upon information and belief, the Joybuy Defendants sell products through both first party channels, such as their own websites, as well as through third party e-commerce sites including *Walmart.com* and are among the top sellers on *Walmart.com*'s marketplace, maintaining product listings in the tens of thousands across a variety of brands in their portfolio.

44.     In 2022, Plaintiff conducted a Google search for the term "plank trainer" and discovered a substantial number of infringing activities involving his patented ABMILL Plank Trainer and the Patents-in-Suit. The search results showed a multitude of infringing products that replicated the ABMILL Plank Trainer in its entirety or included every element of at least one independent claim from the Patents-in-Suit. This proliferation of infringing products was particularly concerning for Plaintiff, as his product was struggling to gain recognition at the time.

45.     The initial search results led to *Walmart.com*, where Plaintiff discovered numerous infringing product listings which appeared to be sold by a variety of sellers under obscure brand names such as "Geruite," "iPretty," "TAONMEISU," "Zochlon," and "PWtool," to name a few, whose business names were often long strings of letters with no spaces in Pinyin Chinese, presenting an especially daunting challenge for Plaintiff to assert his patent rights due to the vast proliferation of infringing products, the apparent number of diverse players involved, and the difficulty in tracking down responsible parties.

46.     Plaintiff believed Walmart's online reporting form located at *https://brandportal.Walmart.com/ipservices* could help solve the problem, and began using it on September 24, 2022, hopeful that diligent use of this tool would be effective in curbing such activities.

47.     On September 24, 2022, Plaintiff sent an email request to Walmart for additional assistance with the unusually high number of infringing listings that had been discovered and applied to register on Walmart's Brand Portal to facilitate the reporting process. However, despite the email request, Plaintiff received no response, and Walmart rejected the

1   application, obscurely citing inability to verify the information provided. Therefore, Plaintiff

2   continued utilizing the online reporting form, which did not require registration.

3       48.   During the initial reporting phase that lasted several weeks, Plaintiff submitted

4   approximately 260 reports using the tool. As of March 24, 2023, the total number of reports

5   submitted had exceeded 1,000. As of April 30, 2023, there are at least 58 listings for infringing

6   planking devices on *Walmart.com*, including at least 50 attributable to the Joybuy Defendants.

7   These listings are for products substantially identical to Infringing Devices 2, 4 and 8 (as

8   described in the Exhibit B), Infringing Devices 10 and 11 (as described in Exhibit C), and

9   Infringing Devices 12 and 13 (as described in the Exhibits E), as well as to listings that were

10  previously reported and removed by Walmart's Trust and Safety team.

11      49.   In response to Plaintiff's repeated reporting of infringing product listings,

12  Walmart sent takedown notification emails, which were largely standardized, acknowledging

13  its commitment to respecting intellectual property rights and removing reported listings.

14  However, in the case of at least approximately 60 listings, substantially identical to others that

15  were unpublished, Walmart suggested that Plaintiff contact the sellers directly to resolve the

16  matter instead of removing them.

17      50.   Upon further review of the listings that Walmart advised Plaintiff could be

18  resolved directly with the seller, Plaintiff discovered that the many of the listings were sold by

19  the Joybuy Defendants, while some other sellers listed under obscure business names also

20  appeared to have benefitted from Walmart's decision not to unpublish their listings.

21      51.   When Plaintiff contacted some of these sellers directly, he found that they

22  were either unresponsive or not truthful in their communications with Plaintiff, or their email

23  contact information was invalid. For example, on September 30, 2022, Plaintiff sent a cease-

and-desist letter to the contact email address listed on Joybuy America's official site, *https://www.joybuy-us.com*, which was *service-us@jd.com*; however, the email bounced back to Plaintiff, indicating that the email address may have been invalid or inactive at the time. Plaintiff also attempted to contact JD.com, Joybuy's parent company, through various email addresses found through internet research, including *service@jd.com, worldwide@jd.com, ir@jd.com,* and *press@jd.com,* but did not receive a response.

52.     From September 24 through December 17, 2022, Walmart removed only a small number of infringing products that were acknowledged as being sold by the Joybuy Defendants (*e.g.,* product ID # 1100845674, 1724086171), with more removals to follow.

53.     As of March 24, 2023, Walmart had removed approximately 90 infringing product listings in which either Joybuy or Joybuy America was identified as the "Sold and shipped by" seller or otherwise to be responsible party.

54.     However, the actual number of infringing listings attributable to the Joybuy Defendants may be greater, and the number removed by Walmart is uncertain due in part to certain limitations in its reporting process. For instance, many out-of-stock items have no consumer-facing seller associated with them, and it is unclear whether a Joybuy Defendant or someone else was the seller. In some cases, the disposition or provenance of the products was never disclosed by Walmart. Additionally, Walmart's takedown notification emails provided product numbers and parties responsible for them in unmatched groupings, making it difficult to accurately track and identify infringing products and the responsible parties.

55.     Even after being taken down, the presence of a large number of illicit listings on a platform can cause lasting damage due to factors such as sponsored ads and persistent caching by search engines, which can continue to display links or removed web pages. As a

result, infringing listings can have a prolonged digital footprint that leads consumers to find illicit products on other channels, despite their removal from Walmart's Marketplace. Furthermore, the one-time visibility of such listings can reinforce the illicit products, as they carry the imprimatur of Walmart's well-known brand and reach, weakening the Plaintiff's ability to establish a market for his own products, eroding trust in Plaintiff's product and diminishing its appeal as a viable alternative in a crowded marketplace dominated by generic-seeming alternatives.

56.     On or about January 5, 2023, through counsel retained for the purpose, Plaintiff sent a certified mail and email infringement notice to Walmart describing the problem with email follow-up. Walmart responded to the communication through different legal representatives on January 11 and January 17, 2023, directing Plaintiff to use their online reporting form for intellectual property claims.

57.     Walmart routinely provided details on the responsible seller for specific products in their takedown notifications. In a notification regarding Joybuy products on January 2, 2023, Walmart identified its own representative, Megan Gamble, as the point of contact for Joybuy's *Walmart.com* intellectual property infringement issues. This was not an isolated event, as in a March 2, 2023 email regarding other products, Gamble was once again the primary point of contact for issues relating to Joybuy's intellectual property compliance, indicating her ongoing responsibility for addressing these issues for Joybuy.

58.     In early March 2023, Joybuy continuously relisted an infringing planking device under different brand names simultaneously, despite it having been removed multiple times in the past. This pattern of behavior had also been, and continues to be, observed with other infringing products in their inventory. Despite repeated alerts to Walmart, no proactive

1  steps were taken to address the ongoing patent violations, exacerbating the ongoing patent

2  violations. On March 4 and 6, 2023, Plaintiff reached out to Joybuy to seek a resolution.

3  59.   In emails to the responsible parties designated by Walmart, including Gamble

4  at the email address provided, *megan.gamble@walmart.com*, Plaintiff requested cooperation in

5  stopping the flagrant infringing activity. Plaintiff informed Joybuy's designated individuals

6  that the assertion of the Patents-in-Suit had resulted in removal of all of its products previously

7  offered and that it should announce its intentions within this product category to avoid

8  potential future infringement. Despite Walmart designating Gamble as the primary point of

9  contact and the only named representative for Joybuy's intellectual property compliance in the

10  relevant emails, Plaintiff received no response to his correspondence, and Joybuy's infringing

11  activities did not abate.

12  60.   Joybuy's flagrant and ongoing infringement activities not only caused

13  significant harm to Plaintiff's intellectual property rights but also contributed to the widespread

14  degradation of the value of his valid intellectual property, making it appear unremarkable in the

15  marketplace. Taking advantage of Walmart's system delay and lack of proactive measures,

16  Joybuy infused the market with infringing products, including multiple copies of the same

17  product under different brand names, with little consequence, further contributing to the

18  confusion and erosion of Plaintiff's intellectual property rights.

19  61.   Walmart treated each infringing product as a separate issue rather than

20  consistently removing all similar infringing items. Joybuy repeatedly took advantage of this by

21  listing multiple copies of, for example, Infringing Device 11 (as described in Exhibit D) with

22  different brand names, such as "zppruwe," "Willy," "Sehao," "ociviesr," "ForestYashe," and

23  others, resulting in excessively rampant infringement. Despite numerous reports and notices of

infringement, and Walmart's ability to monitor and remove infringing listings, Joybuy continued to persist in its strategy, including maintaining nine duplicate listings of the infringing device under various names such as "cuitcosohg" and "YCLKVG" as of April 30, 2023. This is just one example of Joybuy's strategy of listing multiple identical infringing products under different brand names, or even the same brand, which is evident in many infringing planking devices currently listed in Walmart's Marketplace, where multiple duplicates only serve to clutter the marketplace with indistinguishable and infringing products.

62.     The Joybuy Defendants are known to be major players in the distribution of products generally implementing a system of utilizing a system of smaller vendors or affiliated suppliers to distribute products.

63.     It is believed that the large-scale proliferation of infringing products, such as those witnessed in this case, is the result of active encouragement from actual manufacturers or larger sellers who use a network of smaller vendors or conduits to distribute the infringing products, and this infringement shielding strategy has been used by vendors on *Walmart.com*, including those selling infringing planking devices.

64.     Smaller vendors or entities with alter ego names can be set up efficiently by those with knowledge of overseas company formation, taking advantage of anonymity, geographical distance, language barriers, and the difficulties in enforcing intellectual property rights across jurisdictions, to shield the main infringer from liability, as the smaller entities can simply disappear or reform when confronted with infringement allegations.

65.     Entities identified by Walmart as the sellers responsible for infringing planking devices often have a limited digital presence consisting mainly of their *Walmart.com* seller profile and a few instances where they were named as defendants in intellectual property

infringement cases. This suggests that these entities may have restructured or ceased operations in response to previous infringement allegations.

66.     For instance, vendors of infringing planking devices such as Shenzhenshi Bosite Maoyiyouxiangongsi (a.k.a. Bring good luck) and Shenzhenshi Keruiheng MaoyiYouxiangongsi have online presences that primarily showcase their involvement in intellectual property litigation, their *Walmart.com* seller profile, or apparent ties to brands in Joybuy's brand portfolio, such as "Casinow," "Geruite" and "Ksruee." The fact that these entities are permitted to become *Walmart.com* sellers despite having no legitimate identity or significant digital presence complicates the task of asserting patent rights against infringing sellers, as these entities may prove difficult to locate or may be effectively judgment-proof.

67.     Joybuy is connected to other infringing entities through individuals serving as corporate representatives for multiple companies, both domestic and overseas, according to available information. Meifang Wu, who is associated with at least two infringing companies, Shenzhen Chuang Shi Tong Technology Co., Ltd (a.k.a. Creativion of happiness) and Defendant Centune Toon, Inc. (a.k.a. CentuneToon Home), is one such individual. Walmart explicitly named Wu as a point of contact for Shenzhen Chuang Shi Tong Technology Co., Ltd (a.k.a. Creativion of happiness), and in public filings she is listed as the registered agent for Centune Toon, Inc. (a.k.a. CentuneToon Home). Joybuy is directly linked to Centune Toon, Inc. (a.k.a. CentuneToon Home), which appears to have minimal corporate identity apart from Joybuy since, as of May 2, 2023, Joybuy was the only seller of products bearing the "CENTUNE TOON" brand on *Walmart.com*. Joybuy and Shenzhen Chuang Shi Tong Technology Co., Ltd (a.k.a. Creativion of happiness) are at least indirectly linked through their shared association with Wu and offering identical product numbers in Walmart's seller

database. They are also the only two sellers currently offering Infringing Device 12 (as described in Exhibit E) with product ID #1477513830 / 174881074, which further indicates a possible connection. However, Walmart misrepresented these entities as distinct and separate and failed to disclose Wu's ties to Centune Toon, Inc. (a.k.a. CentuneToon Home) and Joybuy, which highlights Walmart's misleading handling of infringing parties on its platform.

68.     Building on the previously mentioned association between infringing entities and Joybuy, these entities often listed identical infringing products concurrently and under brands within Joybuy's brand portfolio. In addition, metadata generated by Walmart's categorization and search criteria frequently associate these entities with Joybuy, as revealed by *Walmart.com* searches, suggesting a closer relationship than initially portrayed. Additionally, Walmart's seller database revealed that certain vendors were tied to Joybuy as the only sellers offering specific infringing planking devices, but did not offer such devices independently from Joybuy.

69.     Walmart's connection to infringing entities became apparent after Plaintiff reviewed raw search results that revealed cached versions of pages from *Walmart.com*. These pages bypassed the search engine's standard metadata curation and displayed *Walmart.com* listings, including a variety of different consumer goods offered at some point in time by entities identified by Walmart as having directly sold infringing plank training devices. Despite previous listings showing products as "Sold and shipped" by a particular infringing entity, the current active page displayed Joybuy or Joybuy America as the seller. The fact that a Joybuy Defendant was listed as the seller on current pages for consumer goods previously sold by infringing entities indicates a clear connection between them. Further, this observation was repeatedly borne out, including but not limited to in reference to Iaobao Limited, Shenzhen Shi

1   Yungang Maoyi Youxiangongsi, and Shenzhenshi Wanwei Weilaikeji Youxiangongsi (a.k.a.

2   Most satisfied), three entities that have been linked to the Joybuy Defendants and are discussed

3   in further detail later in this complaint.

4

5       70.     It is unmistakable that infringing products associated with Joybuy have been

6   sold on *Walmart.com*, as confirmed by Walmart's own database and product reporting tool,

7   and that brand names within Joybuy's brand portfolio have been used for listing substantially

8   identical infringing planking devices.

9       71.     The Joybuy Defendants have capitalized on their relationship with Walmart to

10  sell infringing products on a large scale, in an arrangement that has allowed them to unfairly

11  compete with American businesses, causing harm to American consumers, inventors,

12  businesses alike, including Plaintiff.

13

14      72.     The issue of infringement on *Walmart.com* is widespread with multiple

15  storefronts, and the full extent of their infringement activities across other platforms and

16  distribution channels remains to be determined. With the flaws in Walmart's removal process

17  allowing the repeated relisting of infringing products by Joybuy and others, infringing planking

18  devices have remained persistently present on *Walmart.com* since their discovery by Plaintiff.

19

20      73.     While multiple entities have been found to infringe on Plaintiff's patents via

21  *Walmart.com* and other platforms, Joybuy stands out as the sole offender that has actively used

22  its expertise in Chinese company formation and access to inexpensive goods to conduct a

23  widespread and audacious infringement campaign. Joybuy has formed US-based companies to

24  exploit America's strong corporate protections and benefits, while undermining the system of

25  innovation and fair competition that these protections are intended to foster. Joybuy's

26  persistent sale of infringing products has had a detrimental impact on American parties,

27

28

1  including Plaintiff, whose ability to conduct business and protect his intellectual property has

2  been impaired as a result of the company's illicit conduct.

3  <u>**WALMART'S ACTS GIVING RISE TO THIS ACTION**</u>

4       74.    Plaintiff incorporates by reference each and every allegation in the preceding

5  paragraphs.

6       75.    As the operator and controller of *Walmart.com*, its e-commerce and retail

7  platform for various goods, Walmart exercises complete control over the vendors and products

8  authorized to sell on its platform, effectively acting as the gatekeeper and regulator of the

9  marketplace.

10       76.    All listings on *Walmart.com* are subject to Walmart's discretion and approval.

11       77.    Walmart's actions demonstrate a pattern of bad faith conduct, willful

12  blindness, and enabling behavior in facilitating Joybuy's and others' ongoing and persistent

13  strategy of stealing intellectual property at the expense of Plaintiff's hard-earned innovations

14  and rights.

15       78.    Given Walmart's prominent position as an online retailer with significant

16  experience in intellectual property infringement issues, it is reasonable to infer that Walmart

17  was aware of the strategy employed by infringers to use shell companies and interconnected

18  entities to evade detection and conduct large-scale infringement, and how the lack of honest

19  and transparent information about these interconnections is the cornerstone by which infringers

20  execute their strategy.

21       79.    Walmart asserts that it is not liable for infringing acts of third-party sellers on

22  its platform in part because they list their goods on *Walmart.com* independent of Walmart's

23  control or influence.

80.     However, while Walmart is not directly responsible for the actions of third-party sellers, it does have a legal obligation, despite its hesitancy to meet it, to take reasonable steps to prevent infringing products from being listed or sold on its platform, and it has been entirely free to do so.

81.     In addition, Walmart cannot credibly claim to be an independent operator of the marketplace in this case, given its direct sale of infringing planking devices, as will be described in the following paragraphs, and its unique relationship with Joybuy as a top seller on the platform and a subsidiary of Walmart's partner company.

82.     Throughout this case, evidence suggests that Walmart engaged in a pattern of leveraging its intellectual property reporting process to obtain favorable outcomes for select sellers while allowing others to continue selling infringing products with minimal consequences. This behavior enabled Joybuy and others to engage in widespread infringement, causing significant harm to the intellectual property rights of numerous inventors and businesses, including Plaintiff's in this case. Despite the appearance of being a responsible corporate citizen, Walmart's actions were disingenuous, creating decoys and straw figures to deflect blame and evade responsibility for its role in facilitating this infringement.

83.     As previously mentioned and to be discussed in greater detail below, Walmart participated in Joybuy's infringement issues by appointing an internal team member to handle concerns about Joybuy's intellectual property compliance and disseminating misleading information about the nature of Joybuy's business relationships. By delegating responsibility to its own employee and spreading misinformation supplied by the Joybuy Defendants or their affiliates, Walmart enabled and abetted their large-scale infringement activities, hindering Plaintiff's ability to protect his intellectual property rights.

1    84.    From the first reports of infringement in September 2022 through early May

2    2023, Walmart acted unreasonably to retain certain infringing listings despite removing

3    substantially identical reported products from other sellers. In addition, Walmart did not

4    comply with fundamental intellectual property requirements, exemplified by its decision to

5    allow Joybuy's products to remain visibly "out of stock," including one such product (product

6    ID #1138468103) that is still displayed on the *Walmart.com* marketplace, apparently

7    mistakenly believing that merely removing a Joybuy or Joybuy America as the seller would

8    suffice as an adequate solution.

9    85.    In allowing favored sellers to operate outside of standard enforcement

10   measures, Walmart cited their agreement with Marketplace Sellers as justification for the

11   selective enforcement of its policies. In these cases, Walmart required Plaintiff to resolve

12   patent claims directly with these favored sellers without transparency or explanation as to what

13   made these products or sellers exempt from standard enforcement measures, violating its duty

14   to maintain a fair and equitable platform. As a result, Walmart facilitated a culture of leniency

15   for favored sellers, including the Joybuy Defendants, and enabled prolonged and willful

16   infringement, leaving Plaintiff at the mercy of infringers who Walmart should have known

17   were unresponsive to the assertion of intellectual property rights.

18   86.    During the period of March 10 to March 16, 2023, Walmart's gross

19   negligence towards its Marketplace and disregard for the enforcement of intellectual property

20   rights resulted in a devastating blow to Plaintiff's patent rights, underscoring an ongoing lack

21   of effective measures to prevent such activity. In that short span of time, over 450 new listings

22   featuring devices that infringe on Claim 19 of the '245 Patent were rapidly introduced on

23   *Walmart.com*, including but not limited to Infringing Devices 2, 4 and 6 (as described in

Exhibit B). These listings were not only substantially identical, but also featured identical

product images and descriptions. While a significant number of listings initially showed as

"out of stock," making them harder to trace, the same small group of sellers, including but not

limited to Defendant Wenchang Liuzuohu Shangmao Youxian Gongsi (a.k.a Street Corner Co.,

Ltd.), Anqing Dingwen Shangmao Youxiangongsi (a.k.a. Wonderful Store), Xiangyang

Shixujun Shangmao Youxiangongsi (a.k.a. A Delicate Store), Haikou Hanzhi Shangmao

Youxian Gongsi(a.k.a. First Choice for You), and Shanghai Saman Shangmao Youxiangongsi

(a.k.a. Unbeatable Sale Store), were responsible for both the active and out-of-stock listings.

Breaking down the numbers, Street Corner Co., Ltd. and Wonderful Store alone were

responsible for approximately 243 and 146 of the infringing listings, respectively. These

excessive listings, featuring substantially identical infringing products, were launched in an

effort to flood the market with infringing products, indicating a deliberate attempt to

undermine the Plaintiff's patent rights and disrupt his business.

87.     It is reasonable to infer that the sellers, actively engaged in uploading listings

during this time period, acted in coordination. Based on Joybuy's ongoing use of certain brand

names likely originating with certain of these sellers, such as the "Dingwens" brand,[1] as well as

other evidence, it cannot be ruled out that Joybuy may have played a role in the combined

effort. Furthermore, Walmart was aware of the interrelatedness of the sellers involved, as

evidenced by the fact that it identified multiple sellers with a shared point of contact, indicating

a coordinated effort. For example, in a March 21, 2023 email, a Chinese national named

---

[1] The brand name "Dingwens" is likely derived from the founder's name of Anqing **Dingwen** Shangmao Youxiangongsi (a.k.a. Wonderful Store) as it is a word without common usage or geographical reference that appears in the Pinyin transliteration of the company's name (emphasis added). As of May 2, 2023, Joybuy was the exclusive seller of the "Dingwens" brand on *Walmart.com*, with Joybuy selling the only such product on the site (product ID 1313143027).

1

2

3

4

Weichang Zhang was listed as the contact for both Wenchang Liuzuohu Shangmao Youxian

Gongsi (a.k.a Street Corner Co., Ltd.) and Shuang Jue Teng Shang Mao, providing evidence of

a coordinated effort between the two sellers.

5

6

7

8

9

10

88.     Shockingly, despite Plaintiff's repeated written notices seeking assistance

from Walmart during this accelerated infringement, Walmart failed to respond with any

meaningful action until it eventually sent generic takedown notices with disposable email

addresses and unattended phone numbers for the sellers. Despite this action, the damages to

Plaintiff's rights are significant and long-lasting.

11

12

13

14

15

16

89.     As mentioned previously, regardless of removal, infringing listings can

continue to have a long-lasting impact through sponsored ads displaying the product image and

information, promoting the infringing product regardless of whether they lead to a current

listing on the Marketplace or not. This undermines Plaintiff's ability to establish a market for

his product and secure partnerships with legitimate retailers and distributors.

17

18

19

20

90.     When Plaintiff requested more substantial seller contact information from

Walmart, Walmart's response was inadequate, merely reminding Plaintiff that the listings had

been removed and providing the same insufficient contact information as before, leaving

Plaintiff with no other choice but to take legal action to protect his rights.

21

22

23

24

25

26

91.     Walmart's inadequate responses and piecemeal approach to addressing the

infringement on its platform, providing only short-lived respites, with no meaningful redress

offered, and little assurance that similar infringement will not occur again in the future, has

resulted in irreparable harm to Plaintiff's ability to establish a foothold in the market for the

products that he envisioned, created and patented.

27

28

92. As Walmart routinely provided contact information for both sellers and rights holders, it indicated a recognition of its responsibility to address issues related to infringement. By facilitating communication through its dedicated Trust & Safety team, Walmart creates an expectation of accountability and enforcement for both infringers and rights holders, potentially influencing their behavior.

93. In an extraordinary move, Walmart designated its own representative, Megan Gamble, as the primary point of contact for Joybuy's intellectual property infringement concerns, in direct contrast to its regular practice of providing only third parties in seller contact information. This clearly demonstrated Gamble's role in addressing Joybuy's infringement issues and Walmart's direct involvement in those actions.

94. As mentioned, Plaintiff sent two separate notices of infringement to Gamble and other parties on March 4 and March 6, 2023, respectively, regarding Joybuy's flagrant and persistent infringement practices. However, despite these efforts, no response was received from Gamble or the other parties, and the infringement continued without any acknowledgement from Walmart or Joybuy. Walmart's failure to take any meaningful preventative measures against infringement, despite being aware of Joybuy's infringing activities through its own designated representative, demonstrates a willful disregard for Plaintiff's intellectual property rights.

95. Between September 30, 2022 and February 7, 2023, Walmart denied Plaintiff registered access to its Brand Portal reporting tool, which impeded Plaintiff's ability to fully comprehend the extent of infringement on the Walmart platform. The Brand Portal allows users to identify sellers connected to a reported URL by accessing its seller information database.

96.     Despite Plaintiff's repeated requests for clarification, Walmart's responses were unhelpful and vague, leaving Plaintiff to rely on Walmart's unregistered IP submission form, which lacked the capacity to identify multiple sellers for a single product, and takedown notification emails, which contained confusing, incomplete, or inaccurate information. This restricted Plaintiff's ability to effectively address infringement on the platform.

97.     Walmart has taken an active role in mishandling dubious information in support of its sellers, under the guise of promoting the integrity and safety of its platform. Despite having information about connections between related entities selling on its platform, Walmart gave inconsistent information and ignored the crucial implications these connections had on the legitimacy of these entities' business activities. These actions served to create a misleading impression that these entities were not part of a larger network or under affiliated control. Furthermore, Walmart assisted Joybuy in obscuring associations between it and purported peripheral sellers, allowing these lesser-known infringers to absorb the consequences of removal from the Marketplace or lawsuits while leaving Joybuy relatively unscathed.

98.     Joybuy's dominant influence over certain brands in its portfolio has led to a strong indication that other sellers dealing in such brands would only do so through an arrangement or encouragement by the company. For example, as of April 5, 2023, Joybuy had exclusive control over approximately 400 active product listings for the "iPretty" brand on *Walmart.com*, suggesting that other entities that wanted to sell products under the same brand would need to have some sort of relationship with Joybuy. Nevertheless, Shenzhenshi Wanwei Weilaikeji Youxiangongsi (a.k.a. Most satisfied) sold multiple infringing plank trainers under the brand but was represented to be an entirely separate entity. Many entities involved in

selling infringing planking devices have shown similar ties to Joybuy, despite Walmart's failure to disclose or accurately represent their connections.

99.    Consistent with the trend of concealing affiliations, many alleged peripheral sellers have disappeared, making their online presence nearly undetectable. However, through an investigation of Walmart's metadata for product categorization and criteria matching, Plaintiff uncovered a clear pattern. Using *Walmart.com*'s search feature, Plaintiff conducted searches for certain infringing sellers represented as separate from Joybuy, yet consistently found that all the listings that appeared in the search results belonged exclusively to Joybuy. This indicates that Walmart's search algorithm strongly associated Joybuy with those purportedly separate sellers, which no longer had any presence on the site other than through their ties to Joybuy, directly contradicting Walmart's representations of disconnection and indicating a potentially deliberate effort to obscure Joybuy's role in infringing activity.

100.    One explanation for the association between Joybuy and the peripheral sellers is that Walmart's back-end metadata system is linking the entities based on similarities in product descriptions, titles, and other data points, including pre-established associations. It is also possible that Joybuy has taken over the role of seller for certain infringing products formerly sold by peripheral sellers. Regardless of the specific reasons, Walmart's search algorithm has led to a noticeable correlation between Joybuy and peripheral sellers on its platform.

101.    As previously discussed in paragraph 69, Joybuy's connection to certain peripheral sellers can also be discerned by bypassing a search engine's standard metadata filtering mechanism in order to cross-reference current Joybuy listings with previously archived listings from peripheral sellers, which are only accessible in unrefined search results

1  and share matching product ID numbers. This cross-referencing provides clear evidence of

2  Joybuy's control over the former listings of peripheral sellers, some of whom have also been

3  identified in Walmart's infringement reports for selling infringing products. The observed

4  correlation between Joybuy and these peripheral sellers strongly suggests Joybuy's

5  involvement in their listing activities, including those related to infringing planking devices.

6  Shenzhenshi Wanwei Weilaikeji Youxiangongsi (a.k.a. Most satisfied) is one example of an

7  entity whose ties to Joybuy were brought to light through a process of cross-referencing

8  archived product listings without metadata filtering. Other specific examples will be discussed

9  in the following paragraphs, including Iaobao Limited and Shenzhen Shi Yungang Maoyi

10  Youxiangongsi.

11        102.   Furthermore, the correlation between Joybuy and peripheral sellers on

12  Walmart's platform extends beyond search algorithms. Analysis of Walmart's own internal

13  seller database, accessed by its product reporting tool, revealed that Joybuy and purportedly

14  unrelated entities are also linked together by their sales data and seller accounts. When

15  comparing data for a variety of consumer goods from brands in Joybuy's brand portfolio, it

16  was discovered that product listings could be displayed as "Sold and shipped by Joybuy" on

17  the consumer-facing side, while the back-end seller was instead identified as one of the

18  purported peripheral sellers, indicating a unity of interest between the entities. For example, a

19  screenshot captured on or about March 31, 2023, documented this phenomenon with respect to

20  a product sold by formerly frequent Joybuy co-seller Shenzhenshi Xiaodahuan Maoyi

21  Youxiangongsi (a.k.a. Nice tryy), suggesting that Joybuy has had greater control over other

22  infringing sellers than either Joybuy or Walmart has previously acknowledged. In addition, it

23  appears that Walmart has recently consolidated Joybuy as the primary seller of numerous

consumer goods that were previously co-sold by known infringing entities, as evidenced by Joybuy's recent consolidation of back-end sellers under its name.

103.    Walmart's own takedown emails repeatedly revealed a pattern of known infringers being allowed to resurface under intertwined corporate identities to continue their activities with minimal consequences, as some individuals have been listed multiple times under different names and fictitious emails or phone numbers.

104.    One specific example of this occurred with an individual named Ying Zhang, whose handling by Walmart began in early October 2022. Walmart identified Zhang as the representative of IAO Tech in a March 21, 2023 email, but did not make it clear that this entity had previously been referred to as Iaobao Limited, a Colorado-based business entity implicated in several of Plaintiff's initial infringement reports. Walmart also declined to provide a working email address for Iaobao Limited. Zhang was later identified as the representative of Shenzhen Shi Yungang Maoyi Youxiangongsi in an email from Walmart dated October 13, indicating a relationship between the two entities despite Walmart's initial representation otherwise.

105.    A forensic analysis of search results for Iaobao Limited and Shenzhen Shi Yungang Maoyi Youxiangongsi was conducted using the previously mentioned process of cross-referencing archived product listings obtained without metadata filtering. This examination revealed that Joybuy is currently the primary seller of Walmart product IDs that were previously attributed to these entities, indicating that Joybuy has directly supplanted them as a vendor and establishing a direct link between Zhang's entities, on the hand, and Joybuy, on the other. This finding, coupled with the fact that Shenzhen Shi Yungang Maoyi Youxiangongsi's limited internet trail consists primarily of multiple intellectual property

1    infringement cases, raises serious concerns about the legitimacy of these companies as stand-

2    alone entities, and highlights the laxity of Walmart's trust and safety protocols.

3        106.   Furthermore, it cannot be emphasized enough that this instance is just one

4    example of Walmart's lack of transparency regarding representatives serving multiple

5    companies that are not only known infringers, but also intermingled with Joybuy as sellers

6    identified by Walmart's back-end database on numerous consumer goods, including infringing

7    planking devices. Most notably, Walmart's repeated written misrepresentations to maintain the

8    fiction that infringing entities on its platform are legitimate sellers, rather than being under the

9    control, influence, or direction of Joybuy, are a clear indication that the company has played a

10   role in perpetuating infringing sellers' deceptions.

11

12       107.   Walmart's direct sale of Infringing Device 8 (as described in Exhibit B),

13   marketed under the name Yes4All Inno Board and product ID #230972272, reveals a clear

14   financial interest in the sale of infringing products on its platform and a willingness to profit

15   from the sale of planking devices that borrow from Plaintiff's patented technology while

16   competing against Plaintiff's ABMILL Plank Trainer. This not only created a conflict of

17   interest for Walmart in enforcing intellectual property rights, but also suggests a willingness to

18   prioritize profits over ethical business practices and the rights of patent holders.

19

20

21       108.   Although Walmart acknowledged the evidence presented by Plaintiff as the

22   basis for its decision to delete the listing, its takedown notification email on April 10, 2023

23   failed to acknowledge its responsibility as the direct seller of the infringing product, ignoring

24   transparency and clarity regarding Walmart's liability for its actions.

25

26       109.   Despite Walmart's assurance that it had removed the infringing product

27   listing, the product was still available for purchase directly from Walmart as of May 3, 2023, at

28

a reduced-price indicative of typical infringers' pricing tactics. Additionally, Walmart deliberately hindered efforts to track down other sellers of the infringing product, including ShopTags, LLC and DropAir, LLC, by invalidating the URL when entered into the Brand Portal reporting tool, effectively obscuring the digital trail of other sellers of Infringing Device 8 and obstructing Plaintiff's prevention of future infringement.

110.   Walmart's conduct with respect to its infringing product listing is akin to that of other infringers who have a financial stake in undermining Plaintiff's patent rights without being held accountable for their actions, contrary to the obligation they have assumed to protect intellectual property on their platform.

111.   It should be noted that Walmart has recently engaged in a practice of systematically deactivating URLs from being tracked in its Brand Portal reporting tool, as well as removing still-active peripheral sellers from being listed side-by-side as co-sellers with Joybuy in its back-end seller database. This practice obscures the digital path of sellers with possible unity of interest and other evidence of possible unity of interest between Joybuy and such sellers, erasing critical evidence and obstructing the enforcement of intellectual property rights.

112.   This case serves as a reminder of the power dynamics at play in the intellectual property world, where individual inventors and small businesses must fight against the complementary efforts of multinational corporations who use high-powered legal teams and deep pockets to prioritize profits over respecting patent rights, seizing on the vulnerabilities faced by patent holders in defending against infringers.

113.   Walmart's actions to obscure the true source of infringing products, enable sellers deploying deceptive tactics, and hinder the enforcement of intellectual property rights

are deeply concerning. Despite publicly promoting a commitment to American businesses, values, and trust and safety, Walmart has shown a willingness to prioritize profits over ethical business practices and the rights of patent holders. By taking appropriate action against infringing listings on its platform, Walmart could have easily put an end to the game of whack-a-mole that has forced hardworking and imaginative American creators to constantly chase a never-ending flow of infringing merchandise and try to track down their elusive sellers. In this case, the trail of elusive sellers leads back to Walmart itself.

## ADDITIONAL DEFENDANTS' ACTS GIVING RISE TO THIS ACTION

114.    Multiple storefronts on *Walmart.com* have engaged in selling infringing products, in addition to those sold by the Joybuy Defendants. While the exact number of infringing storefronts is yet to be determined pending discovery, as previously mentioned, Plaintiff made over 1,000 infringement complaints through March 24, 2023. It remains unclear how many of these complaints are unrelated to the Joybuy Defendants or are otherwise interrelated due to the obfuscation tactics outlined above.

115.    Plaintiff has joined the Additional Defendants to better address the issue of infringing products sold on *Walmart.com* by a variety of entities, including those with potential ties to the United States and to other infringers on the platform, and sales of infringing planking devices by these Defendants in other channels. The joinder of Additional Defendants will also facilitate discovery to better understand possible ties among defendants, including possible common sourcing, and address concerns regarding misleading information disseminated about such ties.

116.    The Additional Defendants include Defendants Centune Toon, Inc. (a.k.a. CentuneToon Home) and Iaobao Limited (a.k.a. IAO Tech), which engaged in such infringing

1  activity with respect to infringing planking devices on *Walmart.com* under brands in Joybuy's

2  brand portfolio, such as "Centwalm," and "Huoge," respectively, and each have had multiple

3  consumer goods listings with matching product IDs shared with Joybuy and other connections

4

5  to Joybuy as described earlier in this Complaint. Defendant Funny Bone Products, LLC

6  engaged in such infringing activity with respect to infringing planking devices under the

7  "Yorku" brand and was identified along with Joybuy as a back-end seller for such devices,

8  which remain listed on *Walmart.com* under product ID #1138468103. HTPOIL HOLDING

9  TRADE CO., Ltd engaged in such infringing activity with respect to infringing planking

10

11  devices under the "Fovolat" brand. Defendant INNO PRODUCTS MALL, INC. engaged in

12  such infringing activity with respect to infringing planking devices under the "Inno" brand, a

13  name attached to the Yes4All Inno Board, which is currently sold by Walmart under its own

14  name. Defendant JAYBALLY, INC. engaged in such infringing activity with respect to

15  infringing planking devices under the "Kuluzego" brand, which is a brand offered in common

16

17  with Joybuy, and Walmart declined to remove its reported listings citing its agreement with

18  Marketplace Sellers. Defendant KESLEN LLC engaged in such infringing activity with respect

19  to infringing planking devices under the "eprolo" brand. Defendant New Shining Image LLC

20  (a.k.a. NSI Deals) engaged in such infringing activity with respect to infringing planking

21  devices under the "H&B Luxuries" brand.

22          117.    Despite Plaintiff's repeated requests for removal of infringing planking

23

24  devices, Street Corner Co., Ltd (a.k.a. Wenchang Liuzuohu Shangmao Youxian Gongsi)

25  knowingly and willfully continued to offer and sell hundreds of infringing products under the

26  "Liuzuohu" brand on *Walmart.com* in March 2023, in conjunction with others offering

27  substantially identical products, without taking any meaningful action to address Plaintiff's

28

1   concerns. Walmart provided only transient email addresses and phone numbers for Street

2   Corner Co., Ltd, without providing physical addresses or further identifying information, prior

3   to the filing of a formal legal complaint.

4
    118.   The Additional Defendants are believed to have a ready supply of infringing
5
    devices for sale on *Walmart.com* or other channels, and Plaintiff seeks to discover possible
6
7   common sourcing among defendants to further understand their business practices.

8   **COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,286,245, CLAIM 19**

9
    119.   Plaintiff incorporates by reference and re-alleges all the foregoing paragraphs
10
11  of this Complaint as if fully set forth herein.

12  120.   Upon information and belief, Defendants, as detailed in Exhibit B specifically

13  identifying the infringing product(s) sold by each Defendant, have directly infringed Claim 19

14  of the '245 patent by making, using, offering for sale, selling, and/or importing into the United

15  States products and equipment that embody one or more claims of the '245 patent, including
16
    but not limited to the infringing planking devices listed in Exhibit B (collectively, the "Claim
17
18  19 Devices").

19  121.   As just one non-limiting example, set forth below (with claim language in

20  italics) is a description of infringement of exemplary Claim 19 of the '245 patent in connection

21  with the Claim 19 Devices. This description is based on publicly available information.
22
    Plaintiff reserves the right to modify the description of infringement of each Claim 19 Device,
23
24  including but not limited to identifying infringement of other claims of the Patents-in-Suit, as it

25  obtains additional information during discovery or through other means.

26

27

28

1(a) *An apparatus for facilitating a user to achieve a plank position, the apparatus comprising:* Each Claim 19 Device is specifically designed for facilitating a user to achieve a plank position.

1(b)(i) *a frame having a grip area coupled to a first end and an attachment portion disposed on a second end,* The Claim 19 Devices each include a frame having a grip area coupled to a first end, while the second end of the frame has a portion designed for attachment of the arm support member (as described below).

1(b)(ii) *wherein the grip area comprises at least two grips;* The Claim 19 Devices have a grip area that includes at least two grips, one for each of the user's hands. This feature is designed to facilitate the user's ability to maintain a plank position and to provide support and stability for the user's arms or hands during the exercise.

1(c)(i) *an arm support member having a padded portion and a ground-engaging portion,* The Claim 19 Devices also include an arm support member, which has a padded portion to provide comfort and support for the user's arm, and a ground-engaging portion that allows it to rest on the ground.

1(c)(ii) *wherein the arm support member couples to the attachment portion,* The arm support member of each of the Claim 19 Devices is coupled to the frame, and this connection occurs at the attachment portion.

1(c)(iii) *and wherein a position of the at least two grips or the arm support member is moveable;* In each of the Claim 19 Devices, either the grips or the arm support can move position to accommodate the user's needs.

1(d) *a ground interface surface allowing the apparatus to maintain a self-stabilized position on the ground whereby when the apparatus is placed on the ground, the ground*

*interface surface is in level contact with the ground.* The Claim 19 Devices include a ground interface surface that is in level contact with the ground, allowing the devices to maintain a self-stabilized position when placed on a flat surface.

122.    At least prior to the filing and service of this Complaint, Defendants, as detailed in Exhibit B specifically identifying the infringing product(s) sold by each Defendant, are also indirectly infringing the '245 patent.

123.    Defendants so identified have actual knowledge of Plaintiff's rights in the '245 patent and details of their infringement of the '245 patent based on at least the filing and service of this Complaint.

124.    Defendants so identified have manufactured, used, imported, offered for sale, and/or sold the infringing products. They have knowingly induced their business partners and purchasers to infringe the Patents-in-Suit by using and/or selling the Claim 19 devices. Such actions are in violation of 35 U.S.C. § 271 and demonstrate their willful blindness to Plaintiff's patent rights.

125.    Additionally, Walmart has allowed the Claim 19 devices to be offered for sale and/or sold in its marketplace. Walmart has knowingly facilitated the infringing activities of its third-party sellers and purchasers, thereby inducing such infringing activities and violating 35 U.S.C. § 271.

126.    Such actions by Defendants so identified, as detailed in Exhibit B, and Walmart constitute indirect infringement of the Patents-in-Suit, as well as contributory infringement and vicarious infringement, as respectively alleged in Succeeding counts of this Complaint.

127.     The infringement described above in this Section has caused, and is continuing to cause, damage and irreparable injury to Plaintiff, and Plaintiff will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

128.     Based on the foregoing allegations, Plaintiff has established a clear and convincing case of direct, indirect, contributory, and vicarious infringement of its patented technology by Defendants so identified. Such Defendants have knowingly manufactured, used, imported, offered for sale, and/or sold the infringing products, while Walmart has facilitated these activities and profited from the sales. Such infringement has caused, and continues to cause, significant damage and irreparable harm to Plaintiff's business and reputation, and threatens to undermine the value and validity of its patents. As a result, Plaintiff respectfully requests that this Court grant injunctive relief and award damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,286,245, CLAIM 16

129.     Plaintiff incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

130.     Upon information and belief, Defendants, as detailed in Exhibit C specifically identifying the infringing product(s) sold by each Defendant, have directly infringed Claim 16 of the '245 patent by making, using, offering for sale, selling, and/or importing into the United States products and equipment that embody one or more claims of the '245 patent, including but not limited to the infringing planking devices listed in Exhibit C (collectively, the "Claim 16 Devices").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

131.    As just one non-limiting example, set forth below (with claim language in italics) is a description of infringement of exemplary Claim 16 of the '245 patent in connection with the Claim 16 Devices. This description is based on publicly available information. Plaintiff reserves the right to modify the description of infringement of each Claim 16 Device, including but not limited to identifying infringement of other claims of the Patents-in-Suit, as it obtains additional information during discovery or through other means.

1(a) *An apparatus for facilitating a user to achieve a plank position, the apparatus comprising:* Each Claim 16 Device is specifically designed for facilitating a user to achieve a plank position.

1(b) a *tube having a grip area coupled to a first end and an attachment portion disposed on a second end, wherein the grip area comprises at least two grips*; The Claim 16 Devices have a tube with a grip area connected to one end and an attachment portion located on the other end, and the grip area contains at least two grips.

1(c) *an arm support member having a padded portion and a tube engaging portion, wherein the tube engaging portion couples to the attachment portion*; The Claim 16 Devices include an arm support member having a padded portion and a tube engaging portion that is coupled to the attachment portion of the tube.

1(d)(i) *a rotational feature engageable by the tube,* Each of the Claim 16 Devices includes a rotational feature, which is engageable by the tube of the device.

1(d)(ii) *wherein the rotational feature is positioned underneath the tube and facilitates a rotational movement of the tube about at least one rotational axis, and*; In each Claim 16 Device, the rotational feature is positioned underneath the tube and enables the tube to rotate about at least one rotational axis.

1(d)(iii) *wherein the rotational feature comprises an at least partially spherical component or other curved surface facilitating a controlled alteration of an angle of orientation of the apparatus relative to the ground by the user.* Each Claim 16 Device's rotational feature includes an at least partially spherical component or other curved surface that facilitates a controlled alteration of an angle of orientation of the device relative to the ground by the user.

132.    At least prior to the filing and service of this Complaint, Defendants, as detailed in Exhibit C specifically identifying the infringing product(s) sold by each Defendant, are also indirectly infringing the '245 patent.

133.    Defendants so identified have actual knowledge of Plaintiff's rights in the '245 patent and details of their infringement of the '245 patent based on at least the filing and service of this Complaint.

134.    Defendants so identified have manufactured, used, imported, offered for sale, and/or sold the infringing products. They have knowingly induced their business partners and purchasers to infringe the Patents-in-Suit by using and/or selling the Claim 16 devices. Such actions are in violation of 35 U.S.C. § 271 and demonstrate their willful blindness to Plaintiff's patent rights.

135.    Additionally, Walmart has allowed the Claim 16 Devices to be offered for sale and/or sold in its marketplace. Walmart has knowingly facilitated the infringing activities of its third-party sellers and purchasers, thereby inducing such infringing activities and violating 35 U.S.C. § 271.

136.    Such actions by Defendants so identified, as detailed in Exhibit C, and Walmart constitute indirect infringement of the Patents-in-Suit, as well as contributory

infringement and vicarious infringement, as respectively alleged in succeeding counts of this Complaint.

137.    The infringement described above in this Section has caused, and is continuing to cause, damage and irreparable injury to Plaintiff, and Plaintiff will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

138.    Based on the foregoing allegations, Plaintiff has established a clear and convincing case of direct, indirect, contributory, and vicarious infringement of its patented technology by the Defendants so identified and Walmart. Such Defendants have knowingly manufactured, used, imported, offered for sale, and/or sold the infringing products, while Walmart has facilitated these activities and profited from the sales. Such infringement has caused, and continues to cause, significant damage and irreparable harm to Plaintiff's business and reputation, and threatens to undermine the value and validity of its patents. As a result, Plaintiff respectfully requests that this Court grant injunctive relief and award damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,491,364, CLAIM 1**

139.    Plaintiff incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

140.    Upon information and belief, Defendants, as detailed in Exhibit D specifically identifying the infringing product(s) sold by each Defendant, have directly infringed Claim 1 of the '364 patent by making, using, offering for sale, selling, and/or importing into the United States products and equipment that embody one or more claims of the '364 patent, including

1

2

but not limited to the infringing planking devices listed in Exhibit D (collectively, the "Claim 1 Devices").

3

4

5

6

7

8

9

141.    As just one non-limiting example, set forth below (with claim language in italics) is a description of infringement of exemplary Claim 1 of the '364 patent in connection with the Claim 1 Devices. This description is based on publicly available information. Plaintiff reserves the right to modify the description of infringement of each Claim 1 Device, including but not limited to identifying infringement of other claims of the Patents-in-Suit, as it obtains additional information during discovery or through other means.

10

11

12

13

1(a) *An apparatus for facilitating a user to achieve a plank position, the apparatus comprising:* Each Claim 1 Device is specifically designed for facilitating a user to achieve a plank position.

14

15

16

17

1(b) *an arm support pad;* The Claim 1 Devices include this element, as each device is equipped with an arm support pad to provide comfort and support for the user's arms during use.

18

1(c) *a hand grip;* Each of the Claim 1 Devices provides a grip for the user's hand.

19

20

21

22

23

1(d)(i) *a frame member, extending from proximate a front of the apparatus to proximate a back of the apparatus,* Each of the Claim 1 Devices includes a frame member that extends from proximate the front of the apparatus to proximate the back of the apparatus, providing a structure that allows for the proper use of the device

24

25

26

27

1(d)(ii) *wherein at least one portion of the frame member has a tubular shape at which at least one portion of the arm support pad is attached;* At least one portion of the frame member of each of the Claim 1 Devices has a tubular shape. Furthermore, at least one portion of each arm support pad is attached to the tubular shape.

28

1(d)(iii) *wherein the frame member has the hand grip disposed at a first end and the arm support pad disposed at a second end proximate the back of the apparatus,* The frame member included in each of the Claim 1 Devices has the hand grip disposed at a first end and an arm support pad disposed at a second end proximate the back of the apparatus.

1(d)(iv) *and wherein the hand grip is configured to contact a hand of an arm of the user while the arm support pad is positioned distally from the hand grip in contact with the arm of the user;* The hand grip of each of the Claim 1 Devices is designed to make contact with the hand of the user's arm, while the arm support pad is positioned distally from the hand grip and in contact with the arm of the user. This configuration allows the user to maintain proper form during a standard planking exercise.

1(e) *a contact surface configured to engage a ground surface underneath the frame member or the arm support pad, wherein the contact surface is configured to allow the apparatus to rest on the ground surface whereby when the apparatus is placed on the ground surface, the contact surface is in level contact with the ground surface.* The contact surface on each of the Claim 1 Devices is configured to engage a ground surface underneath the frame member or the arm support pad. This allows the apparatus to rest on the ground surface with the contact surface in level contact with the ground surface.

142.    At least prior to the filing and service of this Complaint, Defendants, as detailed in Exhibit D specifically identifying the infringing product(s) sold by each Defendant, are also indirectly infringing the '364 patent.

143.    The Defendants so identified have actual knowledge of Plaintiff's rights in the '364 patent and details of their infringement of the '364 patent based on at least the filing and service of this Complaint.

144.     The Defendants so identified have manufactured, used, imported, offered for sale, and/or sold the infringing products. They have knowingly induced their business partners and purchasers to infringe the Patents-in-Suit by using and/or selling the Claim 1 Devices. Such actions are in violation of 35 U.S.C. § 271 and demonstrate their willful blindness to Plaintiff's patent rights.

145.     Additionally, Walmart has allowed the Claim 1 Devices to be offered for sale and/or sold in its marketplace. Walmart has knowingly facilitated the infringing activities of its third-party sellers and purchasers, thereby inducing such infringing activities and violating 35 U.S.C. § 271.

146.     Such actions by the Defendants so identified, as detailed in Exhibit D, and Walmart constitute indirect infringement of the Patents-in-Suit, as well as contributory infringement and vicarious infringement, as respectively alleged in succeeding counts of this Complaint.

147.     The infringement described above in this Section has caused, and is continuing to cause, damage and irreparable injury to Plaintiff, and Plaintiff will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

148.     Based on the foregoing allegations, Plaintiff has established a clear and convincing case of direct, indirect, contributory, and vicarious infringement of its patented technology by the Defendants so identified and Walmart. Such Defendants have knowingly manufactured, used, imported, offered for sale, and/or sold the infringing products, while Walmart has facilitated these activities and profited from the sales. Such infringement has caused, and continues to cause, significant damage and irreparable harm to Plaintiff's business

1    and reputation, and threatens to undermine the value and validity of its patents. As a result,

2    Plaintiff respectfully requests that this Court grant injunctive relief and award damages in

3    accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

4
       **COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,491,364, CLAIM 10**
5

6        149.    Plaintiff incorporates by reference and re-alleges all the foregoing paragraphs

7    of this Complaint as if fully set forth herein.

8        150.    Upon information and belief, Defendants, as detailed in Exhibit E specifically

9    identifying the infringing product(s) sold by each Defendant, have directly infringed Claim 10

10   of the '364 patent by making, using, offering for sale, selling, and/or importing into the United

11   States products and equipment that embody one or more claims of the '364 patent, including

12   but not limited to the infringing planking devices listed in Exhibit E (collectively, the "Claim

13   10 Devices").

14
15       151.    As just one non-limiting example, set forth below (with claim language in

16   italics) is a description of infringement of exemplary Claim 10 of the '364 patent in

17   connection with the Claim 10 Devices. This description is based on publicly available

18   information. Plaintiff reserves the right to modify the description of infringement of each

19   Claim 10 Device, including but not limited to identifying infringement of other claims of the

20   Patents-in-Suit, as it obtains additional information during discovery or through other means.
21

22       1(a) *An apparatus for facilitating a user to achieve a plank position, the apparatus*

23   *comprising:* Each Claim 10 Device is specifically designed for facilitating a user to achieve a

24   plank position.
25

26       1(b) *a frame member;* The Claim 10 Devices include a frame providing a structure that

27   allows for the proper use of the device.
28

1(c)(i) *a pad support member secured with a fastener to the frame member, wherein the pad support member is configured to hold an arm support pad and,* In the Claim 10 Devices, a pad support member is present, which is secured with a fastener to the frame member. The pad support member is configured to hold an arm support pad.

1(c)(ii) *wherein at least a portion of the arm support pad is configured to extend laterally beyond at least a portion of the frame member;* In each of the Claim 10 Devices, at least a portion of the arm support pad is configured to extend laterally beyond at least a portion of the frame member.

1(d)(i) *a hand grip, wherein the hand grip is configured to be contactable with a hand of an arm of the user while the arm support pad is positioned distally from the hand grip in contact with the arm of the user,* The hand grip of each of the Claim 10 Devices is designed to make contact with the hand of the user's arm, while the arm support pad is positioned distally from the hand grip and in contact with the arm of the user. This configuration allows the user to maintain proper form during a standard planking exercise.

1(d)(ii) *wherein the frame member has at least a portion of the hand grip disposed at a first end and at least a portion of the arm support pad disposed at a second end proximate a back of the apparatus;* The frame member of each Claim 10 Device has at least a portion of the hand grip disposed at a first end and at least a portion of the arm support pad disposed at a second end proximate a back of the apparatus.

1(d)(iii) *wherein the frame member has the hand grip disposed at a first end and the arm support pad disposed at a second end proximate the back of the apparatus,* The frame member included in each of the Claim 10 Devices has the hand grip disposed at a first end and an arm support pad disposed at a second end proximate the back of the apparatus.

1(e) *a contact surface configured to engage a ground surface underneath the frame member or the arm support pad, wherein the contact surface is configured to allow the apparatus to rest on the ground surface whereby when the apparatus is placed on the ground surface, the contact surface is in level contact with the ground surface.* The contact surface on each of the Claim 10 Devices is configured to engage a ground surface underneath the frame member or the arm support pad. This allows the apparatus to rest on the ground surface with the contact surface in level contact with the ground surface.

152.    At least prior to the filing and service of this Complaint, the Defendants, as detailed in Exhibit E specifically identifying the infringing product(s) sold by each Defendant, are also indirectly infringing the '364 patent.

153.    The Defendants so identified have actual knowledge of Plaintiff's rights in the '364 patent and details of their infringement of the '364 patent based on at least the filing and service of this Complaint.

154.    The Defendants so identified have manufactured, used, imported, offered for sale, and/or sold the infringing products. They have knowingly induced their business partners and purchasers to infringe the Patents-in-Suit by using and/or selling the Claim 10 Devices. Such actions are in violation of 35 U.S.C. § 271 and demonstrate their willful blindness to Plaintiff's patent rights.

155.    Additionally, Walmart has allowed the Claim 10 Devices to be offered for sale and/or sold in its marketplace. Walmart has knowingly facilitated the infringing activities of its third-party sellers and purchasers, thereby inducing such infringing activities and violating 35 U.S.C. § 271.

156.    Such actions by the Defendants so identified, as detailed in Exhibit E, and Walmart constitute indirect infringement of the Patents-in-Suit, as well as contributory infringement and vicarious infringement, as respectively alleged in succeeding counts of this Complaint.

157.    The infringement described above in this Section has caused, and is continuing to cause, damage and irreparable injury to Plaintiff, and Plaintiff will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

158.    Based on the foregoing allegations, Plaintiff has established a clear and convincing case of direct, indirect, contributory, and vicarious infringement of its patented technology by the Defendants so identified and Walmart. Such Defendants have knowingly manufactured, used, imported, offered for sale, and/or sold the infringing products, while Walmart has facilitated these activities and profited from the sales. Such infringement has caused, and continues to cause, significant damage and irreparable harm to Plaintiff's business and reputation, and threatens to undermine the value and validity of its patents. As a result, Plaintiff respectfully requests that this Court grant injunctive relief and award damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,895,573**

159.    Plaintiff incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

160.    Upon information and belief, Defendants, as detailed in Exhibit F specifically identifying the infringing product(s) sold or offered for use by each Defendant (collectively, the "'573 Devices"), have directly infringed the Claim 1 of the '573 patent by practicing the

patented method of the '573 patent. The Defendants so identified have used, offered for use, or performed in the United States the steps of the method embodied in one or more of the claims of the '573 patent by practicing the method described therein with respect to the '573 Devices (collectively, the "Infringing Method").

161.    As just one non-limiting example, set forth below (with claim language in italics) is a description of the Infringing Method used in connection with the '573 Devices. Defendants have directly infringed Claim 1 of the '573 patent by practicing the patented method of the '573 patent by using the '573 Devices to perform the steps of the method described therein. This description is based on publicly available information. Plaintiff reserves the right to modify the description of infringement of each '573 Device, including but not limited to identifying infringement of other claims of the Patents-in-Suit, as it obtains additional information during discovery or through other means.

1(a) *A method of using a plank support exercise apparatus, the method comprising the steps of:* Defendants so identified have used, offered for use, or performed in the United States the steps of the Infringing Method embodied in the '573 patent by using the '573 Devices.

1(b) *providing the plank support exercise apparatus having a frame member, two hand grip areas connected to the frame member, at least two forearm support pads connected to the frame member, and a ground-interface surface positioned along at least a portion of the frame member*; Defendants so identified have used, offered for use, or performed in the United States the step of providing the plank support exercise apparatus having a frame member, two hand grip areas connected to the frame member, at least two forearm support pads connected to the frame member, and a ground-interface surface positioned along at least a portion of the frame member, by using the '573 Devices to perform the Infringing Method.

1(c) *adjusting a first spacing distance of the two hand grip areas relative to the at least two forearm support pads*; Defendants so identified have further used, offered for use, or performed in the United States the step of adjusting a first spacing distance of the two hand grip areas relative to the at least two forearm support pads in accordance with the Infringing Method used in connection with the '573 Devices.

1(d) *adjusting a second spacing distance between the at least two forearm support pads without changing the first spacing distance between the two hand grip areas; and*, Defendants so identified have further used, offered for use, or performed in the United States the recited steps of the method with respect to the '573 Devices by adjusting a second spacing distance between the two forearm support pads of the Infringing Devices without changing the first spacing distance between the hand grip areas of the Infringing Devices.

1(e) *positioning a user on the plank support exercise apparatus, wherein a torso of the user is in a position substantially parallel to a ground surface with forearms thereof on the at least two forearm support pads and hands thereof on the hand grip.* Defendants so identified have used, offered for use, or performed in the United States the step of positioning a user on the plank support exercise apparatus, wherein a torso of the user is in a position substantially parallel to a ground surface with forearms thereof on the at least two forearm support pads and hands thereof on the hand grip, as claimed in the '573 patent, in connection with the Infringing Method used with the '573 Devices.

162.    At least prior to the filing and service of this Complaint, Defendants, as detailed in Exhibit F specifically identifying the infringing product(s) sold by each Defendant, are also indirectly infringing the '573 patent by inducing others to practice the Infringing

Method claimed in the '573 patent, and by contributing to the infringement of the '573 patent by providing the '573 Devices that are used by others to practice the Infringing Method.

163.    Defendants so identified have actual knowledge of Plaintiff's rights in the '573 patent and details of their infringement of the '573 patent based on at least the filing and service of this Complaint, including the Infringing Method used in connection with the '573 Devices.

164.    Defendants so identified have used, offered for use, or performed in the United States the Infringing Method with respect to the '573 Devices, and have knowingly induced their business partners and purchasers to infringe the Patents-in-Suit by using and/or selling the '573 Devices. They have manufactured, imported, offered for sale, and/or sold the '573 Devices that embody the Infringing Method. Such actions are in violation of 35 U.S.C. § 271 and demonstrate their willful blindness to Plaintiff's patent rights.

165.    Additionally, Walmart has allowed the Infringing Method to be practiced through the use and/or sale of the '573 Devices in its marketplace. Walmart has knowingly facilitated the Infringing Method of its third-party sellers and purchasers, thereby inducing such infringing activities and violating 35 U.S.C. § 271. Such actions by Defendants so identified, as detailed in Exhibit F, and Walmart constitute indirect infringement of the Patents-in-Suit, as well as contributory infringement and vicarious infringement, as respectively alleged in succeeding counts of this Complaint

166.    The Infringing Method described above in this Section has caused, and is continuing to cause, damage and irreparable injury to Plaintiff, and Plaintiff will continue to suffer damage and irreparable injury unless and until that Infringing Method is enjoined by this Court.

167.     Based on the foregoing allegations, Plaintiff has established a clear and convincing case of direct, indirect, contributory, and vicarious infringement of its patented technology by Defendants so identified and Walmart. Such Defendants have knowingly manufactured, used, imported, offered for sale, and/or sold the infringing products, while Walmart has facilitated these activities and profited from the sales. Such infringement has caused, and continues to cause, significant damage and irreparable harm to Plaintiff's business and reputation, and threatens to undermine the value and validity of its patents. As a result, Plaintiff respectfully requests that this Court grant injunctive relief and award damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT VI: VICARIOUS PATENT INFRINGEMENT

168.     Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

169.     Upon information and belief, Defendants, including but not limited to the Joybuy Defendants, who engaged vendors or partners for the purpose of facilitating sales had the ability to control those entities who engaged in direct patent infringement. Such Defendants had the right to terminate their relationship with their vendors for any reason whatsoever and through that right had the ability to control the activities of their vendors.

170.     In addition, such Defendants promoted their vendors' products and were in a position to police them. Such Defendants had discretion to end their contracts with their vendors and require the vendors to abide by, observe and obey their terms that no goods sold to them should engage in infringement of the Patents-in-Suit.

171.     Such Defendants financially benefited from the sale of infringing products or practice of patented methods. The Joybuy Defendants would purchase or manufacture the

goods at a cheap price, package and repackage them, and sell them under their own multiple brand names for a profit, while actively encouraged others to sell infringing products on *Walmart.com* or other marketplaces, thus benefiting from the sale of such infringing products

172.     Defendant Walmart, by designating one of its own employees to oversee Joybuy's intellectual property matters on *Walmart.com*, had direct involvement in monitoring and policing Joybuy's conduct on *Walmart.com*. As a result, Walmart had the ability to enforce compliance with its policies and had the discretion to take action and end its business relationship with Joybuy if they failed to comply with those policies or engaged in infringing conduct, and to require them to abide by, observe, and obey Walmart's terms that no goods on *Walmart.com* should engage in patent infringement of the Patents-in-Suit.

173.     Defendant Walmart refrained from taking action against the Joybuy Defendants' infringing conduct because such action may have jeopardized their financial gain and ongoing business relationship with the Joybuy Defendants.

174.     Therefore, such Defendants' acts of vicarious patent infringement as alleged above were, and continue to be, willful, intentional, and malicious, subjecting such Defendants to liability for damages under Section 284 of the Patent Act. Plaintiff seeks damages for such Defendants' infringement of the Patents-in-Suit, including but not limited to compensatory damages, damages as provided by law, and any other relief the Court deems just and proper. Such Defendants' willful and intentional infringement of Plaintiff's Patents-in-Suit also entitles Plaintiff to an award of reasonable attorney's fees and costs.  Plaintiff is also entitled to preliminary and permanent injunctive relief.

1

## **COUNT VII: CONTRIBUTORY PATENT INFRINGEMENT**

2

175.    Plaintiff hereby realleges and incorporates by reference herein each and every

3

allegation in the preceding paragraphs as though fully set forth herein.

4

176.    Upon information and belief, certain Defendants engaged third-party vendors

5

6

or partners for the purpose of facilitating sales on *Walmart.com* or other platforms. Such

7

vendors or partners directly infringed on Plaintiff's patented inventions by knowingly

8

creating, manufacturing, importing, offering for sale, selling, and/or distributing products

9

and/or practicing the patented methods, that infringe on the claims of the Patents-in-Suit.

10

177.    Such Defendants had knowledge of their vendors' or partners' infringing

11

conduct. The Joybuy Defendants tracked, or at least had the ability to track, the sellers

12

13

working with, for or at their direction in selling infringing products.  Defendant Walmart had

14

knowledge of the Joybuy Defendants' infringing activities. Defendant Walmart tracked, or at

15

least had the ability to track, the Joybuy Defendants' infringing conduct.

16

178.    Such Defendants induced, caused or materially contributed to the infringing

17

18

conduct.

19

179.    Therefore, such Defendants' acts of contributory patent infringement as

20

alleged above were, and continue to be, willful, intentional, and malicious, subjecting such

21

Defendants to liability for damages under Section 284 of the Patent Act. Plaintiff seeks

22

damages for such Defendants' infringement of the Patents-in-Suit, including but not limited to

23

24

compensatory damages, damages as provided by law, and any other relief the Court deems

25

just and proper. Such Defendants' willful and intentional infringement of Plaintiff's Patents-

26

in-Suit also entitles Plaintiff to an award of reasonable attorney's fees and costs.  Plaintiff is

27

also entitled to preliminary and permanent injunctive relief.

28

180.

1

## COUNT VIII: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

2

3       181.    Plaintiff hereby realleges and incorporates by reference herein each and every

4   allegation in the preceding paragraphs as though fully set forth herein.

5       182.    Defendants, Joybuy and Walmart, knowingly and intentionally interfered with

6   Plaintiff's existing and prospective business relationships.

7       183.    Based on the facts elucidated earlier in this complaint, such Defendants

8
9   intentionally induced and caused third parties to breach their contracts with Plaintiff or to

10  refrain from doing business with Plaintiff.

11      184.    Such Defendants' tortious interference was willful and malicious, and caused

12  Plaintiff to suffer harm, including lost business opportunities, lost profits, and damage to its

13  reputation.

14
15      185.    Such Defendants' conduct violated Connecticut General Statutes § 52-571b,

16  which states that any person who, by threats or other means, intentionally and improperly

17  interferes with another's contractual or business relationships, shall be liable for the harm

18  caused thereby.

19
## COUNT IX: UNFAIR TRADE PRACTICES

20

21      186.    Plaintiff incorporates by reference each and every allegation in the preceding

22  paragraphs as though fully set forth herein.

23
24      187.    At least Defendant Walmart and the Joybuy Defendants acted in a manner, as

25  alleged above, that constitutes unfair trade practices in violation of the Connecticut Unfair

26  Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq. ("CUTPA").

27      188.    Such Defendants engaged in trade practices that were unethical, oppressive,

28  and substantially injurious to Plaintiff's business and the public. Such Defendants' conduct

1  had a material impact on the market for Plaintiff's patented product, which was unlawfully

2  crowded out by such Defendants' promotion and sale of infringing products.

3       188.    Such Defendants' conduct was also misleading and deceptive in that they

4  marketed and sold products that infringed Plaintiff's patent rights without authorization, while

5  falsely claiming that such products were legitimate and lawful. This conduct was likely to

6  mislead the public and cause confusion as to the source, origin, and sponsorship of the

7  infringing products.

8       189.    Such Defendants' actions were taken with the intent to deceive, confuse, and

9  mislead the public and to cause Plaintiff harm.

10      190.    Based on the facts elucidated earlier in this complaint, such Defendants'

11 conduct violated CUTPA and has caused Plaintiff to suffer damages.

### COUNT X: FRAUDULENT MISREPRESENTATION

191.    Plaintiff hereby realleges and incorporates by reference herein each and every

allegation in the preceding paragraphs as though fully set forth herein.

192.    Walmart and the Joybuy Defendants, by their acts and omissions, made false

and fraudulent representations concerning the nature and extent of their relationship with each

other, and among the Joybuy Defendants and other sellers on the Walmart.com platform,

including but not limited to false and fraudulent representations that certain sellers, in

coordination with the Joybuy Defendants, were not related to the Joybuy Defendants by

providing Walmart with alter ego names, fictitious names, and misleading or inaccurate

information, which concealed the true identity and connection of certain sellers to each other

and to the Joybuy Defendants. These false and fraudulent representations were made by

Walmart to Plaintiff and by Joybuy to Walmart with the intent that rights holders such as

Plaintiff would rely on them.

193.    Such false and fraudulent representations were made with knowledge of their falsity or in reckless disregard for their truth, with the intent to obstruct Plaintiff's efforts to enforce its patent rights and induce Plaintiff to refrain from pursuit of legal action against Walmart or the Joybuy Defendants, thereby causing harm to Plaintiff's business interests.

194.    Walmart's false and fraudulent representations constituted negligent misrepresentations as well. In its role as a marketplace and intermediary, Walmart had a duty to disclose the true nature and extent of its relationship with the Joybuy Defendants and other related sellers, given the potential harm that could result from the sale of infringing products. Furthermore, Walmart had access to information about the Joybuy Defendants' activities and the sellers on *Walmart.com*, and therefore had a duty to exercise reasonable care in making representations about the legitimacy of the products being sold on its platform. By making false and fraudulent representations to Plaintiff, Walmart breached this duty and caused harm to Plaintiff.

195.    Defendants' conduct, as set forth above, constitutes violations of Connecticut General Statutes §52-550 and §52-552, establishing liability for fraudulent and negligent misrepresentation, respectively. The applicable statute of limitations for these claims is set forth in Connecticut General Statutes §52-556.

196.    As a direct and proximate result of such Defendants' fraudulent and negligent misrepresentations, Plaintiff has suffered damages, including but not limited to lost profits and damages to its reputation.

197.    Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, plus interest, costs, and attorney's fees.

198.     Plaintiff is also entitled to preliminary and permanent injunctive relief to prevent further fraudulent and negligent misrepresentations by such Defendants.

**COUNT XI: NEGLIGENT MISREPRESENTATION**

199.     Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

200.     Walmart and the Joybuy Defendants made numerous statements and representations were false and misleading, and upon which Plaintiff reasonably relied to his detriment. These false and misleading representations were made by Walmart to Plaintiff and by Joybuy to Walmart with the intent that rights holders such as Plaintiff would rely on them.

201.     These representations included, but were not limited to, the dissemination of information concerning the nature and extent of its relationship with the Joybuy Defendants and among the Joybuy Defendants and other sellers on its platform, including but not limited to false representations that certain sellers, in coordination with the Joybuy Defendants, were not related to the Joybuy Defendants by providing Plaintiff with alter ego names, fictitious names, and misleading or inaccurate information, which concealed the true identity and connection of certain sellers to each other and the Joybuy Defendants.

202.     These false statements and representations were made negligently, with a reckless disregard for their truth, or with a willful and intentional disregard for their falsity.

203.     Given Walmart's operation of the online marketplace and the Joybuy Defendants' substantial participation as a seller on *Walmart.com*, including access to information about the activities of the Joybuy Defendants and other sellers on the platform, such Defendants had a duty to exercise reasonable care in making these representations.

204.    Plaintiff relied on these representations to his detriment by investing time and resources in trying to stop the infringing activities of these sellers, and in pursuing legal action against Walmart, the Joybuy Defendants or other Defendants.

205.    These negligent misrepresentations were a direct and proximate cause of Plaintiff's damages, including but not limited to lost profits, lost business opportunities, and the costs of litigation.

206.    These actions constitute negligent misrepresentation in violation of Connecticut General Statutes §52-552.

207.    Plaintiff is entitled to recover damages for the injuries sustained as a result of such Defendant's negligent misrepresentations.

## COUNT XII: UNFAIR COMPETITION

208.    Plaintiff hereby realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

209.    The conduct described above constitutes unfair competition under Connecticut General Statute §35-45.

210.    The conduct of Defendant Walmart and the Joybuy Defendants is causing harm to Plaintiff's business and reputation and is likely to cause confusion among the public as to the origin of the goods.

211.    Such Defendants' conduct is done with an intent to deceive and/or is likely to deceive.

212.    Such Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of such Defendants with Plaintiff, or as to the origin, sponsorship, or approval of such Defendants' goods or services.

213.   The unfair competition conduct described above, committed by Defendant Walmart and the Joybuy Defendants, has resulted in harm to Plaintiff's business interests, including but not limited to the damages caused by Defendants' fraudulent and negligent misrepresentations alleged in preceding Counts.

## COUNT XIII: VIOLATION OF LANHAM ACT

214.   Plaintiff realleges and incorporates by reference herein each and every allegation in the preceding paragraphs as though fully set forth herein.

215.   At least Defendant Walmart's and the Joybuy Defendants' activities described herein constitute false advertising, false or misleading descriptions of fact, and/or false or misleading representations of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

216.   Such Defendants' activities have caused and continue to cause confusion, deception, and mistake among consumers as to the origin, sponsorship, or approval of the products sold on *Walmart.com* or other platforms, including the infringing products sold by the Joybuy Defendants.

217.   Such Defendants' activities have resulted in unfair competition with Plaintiff and have caused Plaintiff to suffer irreparable harm and injury to its business reputation.

218.   Such Defendants' activities have been willful, intentional, and malicious, justifying an award of treble damages under the Lanham Act.

219.   Plaintiff is entitled to injunctive relief under the Lanham Act to enjoin Joybuy and Walmart from engaging in further false advertising, false or misleading descriptions of fact, and/or false or misleading representations of fact on *Walmart.com* or other platforms.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants for:

A. Enjoining Defendants, and their agents and servants, from selling the infringing planking devices or otherwise infringing the Patents-in-Suit;

B. Awarding damages to compensate Plaintiff for Defendants' infringement under 35 U.S.C. § 284;

C. Finding this case exceptional under 35 U.S.C. § 285 and awarding Plaintiff its attorneys' fees;

D. Awarding Plaintiff costs and expenses in this action, as well as prejudgment and post-judgment interest;

E. For the counts of Tortious Interference with Business Relationships, Fraudulent Misrepresentation, Negligent Misrepresentation, Unfair Competition, and Lanham Act Violation against Defendant Walmart and the Joybuy Defendants, Plaintiff seeks injunctive relief, damages, and equitable relief, including but not limited to, disgorgement of profits earned by such Defendants, as well as punitive damages in an amount to be determined at trial;

F. Such other and further relief as the Court may deem just and proper.

Dated: May 4, 2023

Michael H. Domesick, *Pro Se*
Plaintiff

1

## DEMAND FOR JURY TRIAL

2

3

A jury trial is demanded pursuant to Fed. R. Civ. P. 38.

4

5   Dated: May 4, 2023

6

7                                              Michael H. Domesick, Pro Se

8                                              Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Exhibit A</u>

Attached are:

U.S. Patent No. 10,286,245 (Exhibit A-1)

U.S. Patent No. 11,491,464 (Exhibit A-2)

U.S. Patent No. 9,895,573 (Exhibit A-3)